# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:24-CV-00716-KDB-SCR

| | |
|---|---|
| **LESSIE THOMAS, POA FOR JAMIL STAFFORD** | |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM AND ORDER** |
| **GARRY L. MCFADDEN, ET AL.,** | |
| **Defendants.** | |

**THIS MATTER** is before the Court on the Defendants' Motions to Dismiss (Doc. Nos. 24, 27, 34, 41). The Court has carefully considered these motions and the parties' briefs and exhibits in support and in opposition. For the reasons discussed below, the Court will in part **GRANT** and in part **DENY** the Wellpath Defendants'[1] Motions to Dismiss (Doc. Nos. 24, 41); **GRANT** Atia Nunally's Motion to Dismiss (Doc. No. 34) and in part **GRANT** and in part **DENY** Sheriff Gary McFadden and Platte River Insurance Company's ("Platte River") Motion to Dismiss (Doc. No. 27).

With respect to the Wellpath Defendants, Wellpath's bankruptcy order bars Plaintiff's claims against the company but not against the individual Wellpath Defendants. For the majority

---

[1] The Wellpath Defendants are Wellpath, LLC ("Wellpath") and Atiya Torrence, Linda Asbury, Roshaunda Friday, Linda Valera, Shelita Jones, Quashonda Anderson, Antionette Thomas, Victoria Cordova, Falie Louis, David Shkinder, Ester Adedokun, Jamie Davis, Daniel Biondi, Daniela Sanchez, Sharette Williams, David Owens, Stanley Black, Annette Black, Alicia Rivers, Irene Dawson, Janika Campbell, Jennifer Dean, Jasmine Robinson, Mary Raudebaugh, Samuel Mortu, Shanta Smith, Toshia Sarkor, Destiny Meeks, Jakiea Williams, Latisha Henry, Nurse Thompson and Kendra Brown (the "individual Wellpath Defendants").

1

of those individual Defendants and Defendant Nunally, Plaintiff has not sufficiently stated a claim under Section 1983 or N.C. Gen. Stat. § 162-55. But Plaintiff's Section 1983 claim will be permitted to proceed as to a few of the individuals based on Plaintiff's allegations of individual wrongdoing.

As for Sheriff McFadden, the Court finds that Plaintiff has minimally satisfied her burden at this early stage of the case on her Section 1983 claims that the Sheriff may be liable both as an individual and in his official capacity for failing to provide constitutionally adequate medical services at the Mecklenburg County jail, which harmed Jamil Stafford. While Plaintiff has a steep hill to climb to ultimately prove these claims, the Court will allow her to pursue the journey, at least to summary judgment. However, the Court will dismiss Plaintiff's state law claims for medical malpractice, negligent hiring and retention and N.C. Gen. Stat. § 162-55 (and the related, derivative surety bond claim), because Plaintiff has not alleged facts sufficient to plausibly support the findings of "malice" or "criminal negligence" necessary to pursue those remaining claims. Finally, the Court will dismiss Plaintiff's independent claim for punitive damages because punitive damages is a potential remedy, not a separate claim under North Carolina law.

## I.     LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255 (4th Cir.

2009). The Court, however, accepts all well-pled facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cty., N. Carolina,* No. 19-2012, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022)*; E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc*., 637 F.3d 435, 440 (4th Cir. 2011). In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II.     FACTS AND PROCEDURAL HISTORY

On March 27, 2021, Jamil Stafford was taken into custody and detained in the Mecklenburg County Detention Center. *See* Doc. No. 1 ¶¶ 64-65. From May 20 to July 4, 2021, Stafford submitted six medical sick call requests all relating to alleged "serious persisting headache(s) which made it difficult to eat, sleep, and perform other basic tasks." *Id*. ¶¶ 67-73. By contract, Defendant Wellpath, LLC was responsible for providing medical care to the jailed detainees. *Id*. ¶ 4. The Complaint describes in detail the jail staff and Wellpath's employees' response to these requests, characterizing their efforts as a failure "to take Jamil's concerns seriously." *See id*. ¶¶ 66-76. The final appointment among these six was on July 27, 2021. Allegedly according to the medical records, Stafford told staff at Wellpath that he had headaches over four times a week for the last two months and rated his pain a 10 on a 1-10 pain scale. *Id*. ¶ 76. Defendant Wellpath

employees Shelita Jones and Atia Nunnally saw Stafford and diagnosed him with "tension-type headaches" with a "low index of suspicion for a secondary cause headache." Defendant Atia Nunnally prescribed him nortriptyline and ibuprofen "[g]iven the severity and duration" of the headaches and advised Stafford to drink more water and use a second blanket for head positioning. *Id*.

On July 30, 2021, Stafford's condition worsened. The Complaint alleges that he "began experiencing stroke symptoms that were so obvious, other detainees and detention officers recognized them" as a stroke. *Id*. ¶ 77. Specifically, over the next four days, jail staff brought Stafford to Wellpath employees each day because he could not speak (or was speaking incoherently), he could not use stairs on his own or had fallen down stairs and/or his body was shaking uncontrollably. *Id*. ¶¶ 77-85. On August 3, 2021, (after fellow detainees in Jamil's pod informed a detention officer that Jamil fell again earlier in the day, he could no longer speak, the right side of his face was drooping, and he could not move his arm), Wellpath staff called EMS to transport Stafford to the hospital for treatment. *Id*. ¶¶ 85-88. At the hospital, doctors diagnosed Jamil with a stroke, noting that stroke symptoms occurred days before his admittance to the hospital. *Id*. ¶ 89-90. He remained hospitalized for eighteen days and was discharged on August 20, 2021. *Id*. ¶ 94. The Complaint alleges that the length of time that Stafford suffered with stroke symptoms severely limited his treatment at the hospital, and he lost the opportunity of beneficial medications and treatments that could have improved his chances of recovery. *Id*. ¶ 91. Stafford alleges continued pain and suffering and other damages as a result of his alleged inadequate and delayed medical treatment. *Id*. ¶¶ 92-96.

Plaintiff Lessie Thomas is Stafford's mother and caregiver and has his Power of Attorney. *Id*. ¶ 1. On his behalf she filed this action on August 2, 2024, asserting six claims against Wellpath,

the Wellpath employees who treated Stafford, Sheriff McFadden (in both his individual and official capacity) and Platte River for: (1) Violations of 42 U.S.C. § 1983; (2) Medical Malpractice and Medical Gross Negligence; (3) Negligent Hiring, Retention, and Supervision; (4) Injury to Prisoner under N.C. Gen. Stat. § 162-55; (5) Action on Bonds under N.C. Gen. Stat. § 58-76-1, et seq.; and (6) Punitive Damages. Defendants have filed Motions to Dismiss all of Plaintiff's claims. *See* Doc. Nos. 24, 27, 34 and 41.

On November 11, 2024, Wellpath Holdings, Inc. and its affiliated companies (including Defendant Wellpath) each filed petitions in the United States Bankruptcy Court for the Southern District of Texas under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy"). *See* Doc. No. 41. Wellpath gave notice of its Bankruptcy petition on November 18, 2024, effectively staying this action. *See* Doc. No. 35. On May 1, 2025, the Bankruptcy Court entered a Confirmation Order confirming the Bankruptcy Plan. In July 2025, in response to a request from the Court for a status update, the Wellpath Defendants filed a "Notice of Discharge and Injunction," informing the Court of the Confirmation Order and a Stay Order entered by the Bankruptcy Court on June 4, 2025, which stated that "all Claims and Causes of Action against the Debtors are discharged as a result of the Plan becoming effective." Doc. No. 38. There is no dispute that the claims against Wellpath in this case are among the claims and causes of action discharged in the Bankruptcy. Also, the Bankruptcy Plan includes protection from claims for all Wellpath current and former employees, who are subject to a Third Party Release. *Id.*[2] Thus, the Wellpath Defendants contend that Plaintiff is permanently enjoined from further prosecution against

---

[2] Although the Parties do not explain why, they agree that the Bankruptcy Order and discharge does not cover Defendant Nunnally as a former employee. *See* Doc. No. 48.

Wellpath and its current and former employees by the Bankruptcy Confirmation Order and Stay Order. *Id.* [3]

In response, Plaintiff acknowledges that she cannot pursue Wellpath directly, but requests that she be permitted to proceed against it in a nominal capacity for the limited purpose of pursuing potential recovery from Wellpath's Third-Party Insurers. Doc. No. 39. However, on July 22, 2025, Wellpath communicated to Plaintiff that there are no available third-party insurance proceeds because, to the extent Wellpath obtained insurance policies, those policies were "fronting" policies in which Wellpath effectively retained all the risks of loss. These insurance policies have been provided to Plaintiff for her review.

Following further status reports from the Parties, the Court directed that Plaintiff respond to the pending Motions to Dismiss and that Defendants reply. The briefing of the motions has recently been completed and the motions are ripe for the Court's ruling.

### III. DISCUSSION

#### A. Motion to Dismiss Wellpath LLC and the Individual Wellpath Defendants (Doc. Nos. 24, 41)

##### 1. Wellpath

The Wellpath Defendants' motions to dismiss Plaintiff's claims based on Wellpath's bankruptcy are straightforward. As described above, Wellpath filed a petition for bankruptcy, which resulted in a confirmed bankruptcy plan and Stay Order that discharges Plaintiff's claims against Wellpath. Further, while the Wellpath Defendants do not dispute that the Confirmation

---

[3] Plaintiff states that she "opted out" of the Third Party Releases as to the individual Wellpath Defendants so she is not bound by them. *See* Doc. No. 52-3. The Court notes that the Wellpath Defendants did not reply to this argument so the Court will assume that Plaintiff's "opt out" successfully removed the individual Wellpath Defendants from the Bankruptcy release / discharge as to her claims. *See* Doc. No. 53.

6

Order and Plan allow parties to attempt to collect on their claims solely from a Debtors' insurance policy, they argue that Plaintiff cannot sue Wellpath, even as a "nominal" defendant, unless she establishes that third-party insurance proceeds are available and can be accessed without otherwise collecting from Wellpath or its assets. They conclude by stating that the undisputed facts, most prominently the insurance policies in the record, make clear that no third-party insurance proceeds are available and the costs of continued litigation would have to (improperly) be borne by Wellpath.

Plaintiff's response is, respectfully, nothing more than a request that she be allowed to continue her claims against Wellpath notwithstanding Wellpath's showing, because of the "severity of the injuries suffered by" Stafford and the "prejudice" she would suffer if the claims are dismissed. Significantly, she does not challenge any of Wellpath's contentions about the nature of its insurance or suggest any viable path to insurance coverage. Although the Court understands Plaintiff's disappointment in having to dismiss the entity who she most prominently blames for Stafford's alleged mistreatment, the Court cannot ignore the law and permit her to pursue discovery (and thereby impose costs on Wellpath in violation of the Bankruptcy orders) without some plausible allegation that there are in fact insurance proceeds available. That is, a lawsuit cannot just be the means to pursue a fishing expedition into a potential claim. *See Iqbal*, 556 U.S. at 678-79 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more" than "conclusions" or the "mere possibility" of liability). Therefore, the motion to dismiss Plaintiff's claims against Wellpath will be granted pursuant to the orders of the Bankruptcy Court.

7

### 2.    The Individual Wellpath Defendants

In addition to Wellpath, Plaintiff sued thirty-two (32) former Wellpath employees,[4] all of whom have moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6). Based on "opting out" of their Third-Party Releases, Plaintiff has retained her claims against those defendants, despite the Wellpath bankruptcy. *See* Doc. No. 52. Therefore, the Court must consider, for each individual defendant, whether Plaintiff has made sufficient factual allegations to support her two legal claims against these defendants – violation of 28 U.S.C. § 1983 and N.C. Gen. Stat. § 162-55.

### a)    Section 1983

Plaintiff's first claim against the individual Wellpath Defendants is that they violated 28 U.S.C. § 1983 in both their individual and official capacities.

### (1)    Individual Capacity Claim

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege: (1) a right secured by the Constitution and laws of the United States was violated, and (2) that the violation was committed by a person acting under color of state law. *Loftus v. Bobzien*, 848 F.3d 278, 284-85 (4th Cir. 2017) (internal quotation marks omitted). Further, Section 1983 liability is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). To that end, a Section 1983 claim requires allegations about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only

---

[4] Plaintiff also sued former Wellpath employee Atia Nunnally, who filed a separate Motion to Dismiss discussed below.

8

"where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

Plaintiff alleges that the Wellpath individual Defendants violated Stafford's rights under the Eighth and Fourteenth Amendments to the United States Constitution because they failed to provide Stafford constitutionally adequate medical care. *See, e.g.*, Doc. No. 1, ¶ 107. An inmate's right to medical care is violated when a jail official acts with "deliberate indifference" to "a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 827, 828 (1994); *Gordon v. Kidd,* 971 F.2d 1087, 1094 (4th Cir.1992) ("Pretrial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainees' rights to due process when they are deliberately indifferent to serious medical needs."). Deliberate indifference is a high standard and cannot be met by a showing of mere negligence. *Short v. Hartman*, 87 F.4th 593, 611–12 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2631, 219 L. Ed. 2d 1269 (2024); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"). That is, medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Id*. (prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs).

As to the specific showing required, the Fourth Circuit has explained:

> To state a claim for deliberate indifference to a medical need … a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

9

*Short*, 87 F.4th at 611.

Applying these principles to the various individual Wellpath Defendants leads to different results. As to Defendants Torrence, Friday, Valera, Thomas, Cordova, Louis, Shkinder, Adedokun, Davis, Biondi, Sanchez, Sharette Williams, Annette Black, Rivers, Dawson, Campbell, Dean, Robinson, Raudebaugh, Mortu, Smith, Sarkor, Jakiea Williams, Henry and Brown,[5] the Complaint alleges only that they 1) were employees of Wellpath, 2) acted under color of state law and as an agent of Sheriff McFadden, and 3) were responsible for providing constitutional based healthcare to pretrial detainees at the jail. The Court easily concludes that these general allegations, which do not allege any specific wrongdoing as to any of these defendants, are insufficient to support Plaintiff's claim of a constitutional violation based on deliberate indifference. Merely working at the jail providing healthcare is plainly not enough to hold a person liable (either individually or otherwise) under Section 1983. Therefore, Plaintiff's claims against these Defendants will be dismissed.

The Court similarly finds that Plaintiff has failed to allege sufficient factual allegations against David Owens and Roshaunda Friday. In addition to the general allegations found lacking above, Plaintiff alleges that on the day that he was sent to the hospital Defendant Friday "noted that Jamil's speech was unintelligible, his right arm was drooping, as was the right side of his face" and Owens "activated EMS," which transported Stafford to the hospital. *See* Doc. No. 1 ¶ 87. As with the Defendants above, there is no factual allegation of wrongdoing. Indeed, the Court is at a loss to see how such alleged conduct – in effect doing what Plaintiff says he wanted to be done –

_____

[5] A number of the individual Wellpath defendants did not join the initial Motion to Dismiss (Doc. No. 24), yet all joined the second motion, which focused on the Bankruptcy discharge but also incorporated by reference the arguments in support of the earlier motion. Accordingly, the Court will consider the merits of the Parties' Rule 12(b)(6) arguments as to all the individual Wellpath defendants.

could plausibly support a claim of constitutional indifference. Therefore, David Owens and Roshaunda Friday will be dismissed as Defendants.

Plaintiff's allegations against the remaining individual Wellpath Defendants are more substantial. As to Defendants Jones, Stanley Black, Asbury, Anderson, Meeks and Thompson, Plaintiff alleges either that they saw Stafford multiple times, ignored serious medical complaints and/or failed to respond to clear indications that he was having a stroke. *See* Doc. No. 1 ¶¶ 67-84. While discovery may reveal that Plaintiff is unable to prove conduct that rises to the high level of a constitutional violation, Plaintiff's allegations (generously construed) are sufficient to plausibly allege the elements of deliberate indifference under *Short*. Therefore, the Motions to Dismiss (Doc. Nos. 24, 41) will be denied as to these Defendants on Plaintiff's claim of a violation of Section 1983 in their individual capacities.

### (2) Official Capacity Claims

Plaintiff also asserts a *Monell* claim against the individual Wellpath Defendants. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell*, four theories can be pursued to prove an unlawful custom, policy, or practice violates Section 1983: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train [employees], that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice so "persistent and widespread" as to constitute a "custom or usage with the force of law." *See Bailey v. Campbell*, 2022 U.S. Dist. LEXIS 205190, *5 (W.D.N.C. Nov. 10, 2022) (citing *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999))); *see also A.G. v. Fattaleh*, 614 F. Supp. 3d 204, 2022 WL 2758607 (W.D.N.C. July 14, 2022).

11

As noted above, Plaintiff's claims against many of the individual Wellpath Defendants fail; therefore, the claims against them in their "official capacity" also cannot proceed. *See Waybright v. Frederick Cnty.,* 528 F.3d 199, 203–04 (4th Cir. 2008); *Boston v. Davis*, No. 3:11CV450, 2011 WL 6826812, at *6 (W.D.N.C. 2011) ("Since there is no underlying constitutional violation by [the defendant] in his individual capacity, [the][p]laintiff's official capacity claims against [the defendant] should also be dismissed."). Also, if a Plaintiff fails to allege that any official policy was the moving force or played some part in a constitutional violation, an official capacity claim under Section 1983 fails to state a claim. *See Mitter v. LNU*, No. 1:22-cv00256, 2023 WL 2762036 at *2, (W.D.N.C. 2023) (Court dismissed a 1983 claim against a jail nurse where she was only sued in her official capacity and where the claimant failed to identify any official policy that played a part in the constitutional violation); *Justice v. White*, No. 5:13CV-548, 2014 WL 537017, at *4 (E.D.N.C. 2014) (Court dismissed a 1983 claim against a jail nurse where the claimant failed to allege any unconstitutional practice, policy, or custom). Here, Plaintiff's Complaint does not identify any policy implemented by these Defendants that played a part in the alleged constitutional violation. Accordingly, Plaintiff's "official capacity" claims against all the individual Wellpath Defendants will be dismissed.

### b) N.C. Gen. Stat. § 162-55

Plaintiff's second claim against the individual Wellpath Defendants alleges that they violated N.C. Gen. Stat. § 162-55, Doc. No. 1 ¶¶140-147. Pursuant to that statute, "[i]f the keeper of a jail shall do, or cause to be done, any wrong or injury to the prisoners committed to his custody, contrary to law, he shall not only pay treble damages to the person injured, but shall be guilty of a Class 1 misdemeanor." N.C. Gen. Stat. § 162-55. Plaintiff's claims against the individual Wellpath Defendants under the "keeper of the jail" statute are misplaced. Most simply put, healthcare

workers at the jail are not "jailers" subject to Section 162-55. *See Wiley v. Buncombe County*, 846 F. Supp. 2d 480, 486 (W.D.N.C.), *aff'd* 474 Fed. App'x 285 (4th Cir. 2012); *see also* N.C. Gen. Stat. § 162-22 ("The sheriff shall have the care and custody of the jail in his county; and shall be, or appoint, the keeper thereof.")

Plaintiff has cited cases from the North Carolina Court of Appeals suggesting that a sheriff need not be the exclusive "keeper of the jail." *See State v. Shepherd*, 156 N.C. App. 603, 607 (2003) (bailiffs and designated assistant jailers might also be considered "keepers of the jail"); *Leonard v. Bell*, 254 N.C. App. 694, 700 (2017). Even if that is true, Plaintiff has not cited any authority for the proposition that an employee of the jail or agent of the Sheriff who is not a detention officer and provides *non-custodial* services could be considered a "jailer" within the meaning of the statute. And the Court declines to extend the statute to include such employees (indeed, the characterization of a nurse as the "keeper of the jail" seems to strain the natural meaning of the statutory language, as well as common sense).

All employees and contract vendors in a jail of course participate to some extent in the "care, custody, and maintenance of prisoners in [a] jail," *Shepherd*, 156 N.C. App at 607, yet that does not make them "jailers," and certainly not "keepers of the jail." Otherwise, cafeteria workers, librarians, janitors, etc. would all be subject to Section 162-55. In sum, healthcare workers provide critical care to inmates (and are subject to important constitutional obligations as discussed above), but they are not "keepers of the jail" under N.C. Gen. Stat. § 162-55. Plaintiff's claims against the individual Wellpath Defendants under N.C. Gen. Stat. § 162-55 must therefore be dismissed for failure to assert a claim as a matter of law.

13

**B.     Motion to Dismiss Atia Nunnally (Doc. No. 34)**

Defendant Nunnally separately moves to dismiss the claims against her pursuant to Rule 12(b)(6), arguing that the few allegations involving her do not sufficiently state a claim for a violation of 28 U.S.C. § 1983 or N.C. Gen. Stat. § 162-55. Doc. No. 1 ¶¶ 75-76. For reasons similar to the Court's discussion of the individual Wellpath Defendants, the Court agrees.

**1.     Section 1983**

As with the Defendants discussed above, to hold Defendant Nunnally individually liable under Section 1983, Plaintiff must first plausibly allege that she acted with "deliberate indifference" to "a substantial risk of serious harm." *Farmer,* 511 U.S. at 828. However, Plaintiff's allegations against Defendant Nunnally are confined to a single medical appointment before Stafford began experiencing any stroke symptoms and during which she prescribed him a new, stronger narcotic (Nortriptyline) to treat his headaches, along with additional medical advice. These limited allegations are insufficient to support a claim for a constitutional violation for "deliberate indifference." Further, the Court will dismiss Plaintiff's "official capacity" claims against Defendant Nunnally for the same reasons discussed above in connection with the individual Wellpath Defendants.

**2.     N.C. Gen. Stat. § 162-55**

Defendant Nunnally is also entitled to dismissal of Plaintiff's claims under N.C. Gen. Stat. § 162-55. As discussed above, nurses who provide healthcare services to inmates and do not have any role as detention officers are not subject to the statute, which only applies to "keepers of the jail." Therefore, Plaintiff's claims against Defendant Nunnally under N.C. Gen. Stat. § 162-55 will be dismissed.

14

**C.      Motion to Dismiss Sheriff Gary McFadden and Platte River (Doc. No. 27)**

Plaintiff asserts numerous claims against Sheriff McFadden and his sureties, and they move to dismiss all of them. Each is discussed below, with the Court concluding that Plaintiff's Section 1983 may proceed, but that her state law and surety claims must be dismissed.

**1.      Section 1983**

As with the Wellpath Defendants, Plaintiff's first claim against Sheriff McFadden asserts that he violated Section 1983 in both his individual and official capacities. With respect to her individual claims, Plaintiff contends that the Sheriff personally caused the deprivation of Stafford's constitutional right to adequate medical care during his detention by hiring Wellpath and failing to supervise their operations despite their conduct that "posed a pervasive and unreasonable risk of constitutional injury to inmates and detainees." *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); Doc. No. 1 ¶¶ 115-119. In response, Sheriff McFadden argues that there are no allegations that he personally participated in or had actual knowledge of Stafford's medical care (or lack thereof) and therefore cannot be individually liable for a violation of Section 1983. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (Section 1983 liability is "personal, based upon each defendant's own constitutional violations"); *Sims v. Clarke*, No. 7:18-CV-00444, 2019 WL 6188304, at *2 (W.D. Va. Nov. 20, 2019) (There must be "personal knowledge of and involvement in the alleged deprivation." (quoting *Wright*, 766 F.2d at 850)).

While the Sheriff is certainly correct that individual liability under Section 1983 requires personal involvement, the Court finds that at this early stage of the case and in light of the nature of a 12(b)(6) motion to dismiss that requires the Court to accept Plaintiff's allegations, along with all plausible inferences, as true, Plaintiff has sufficiently alleged that Sheriff McFadden had sufficient knowledge of Wellpath's ongoing constitutionally inadequate healthcare (even if he

15

didn't know about Stafford's specific circumstances) that he could be personally liable under Section 1983.[6] Of course, whether discovery reveals the actual evidence of the Sheriff's involvement necessary to prove Plaintiff's claims (i.e., beyond simply having overall responsibility for the jail and constructive knowledge of what occurs there) will become clear as the case moves forward and is no doubt tested at summary judgment. Yet, for now, the Court will permit Plaintiff's individual Section 1983 claim to proceed.[7] *See, e.g., Clarke v. Clarke*, 2021 WL 2953673, at *3 (E.D. Va. July 14, 2021) (denying motion to dismiss inadequate medical care claim against warden and corrections director); *Caramillo v. Correct Care Sols., LLC*, No. 2:19CV362, 2020 WL 4747786, at *1 (E.D. Va. Feb. 28, 2020), *report and recommendation adopted*, No. 2:19CV362, 2020 WL 2468769 (E.D. Va. May 13, 2020) (denying dismissal of claim alleged against jail superintendent, where there was documented history of inadequate medical care at facility).

Similarly, the Court will allow Plaintiff's "official capacity" claim under *Monell* to survive the Sheriff's Motion to Dismiss. Again, *Monell* describes four theories that can be pursued to prove an unlawful custom, policy, or practice violates Section 1983: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking

_____

[6] Plaintiff's claim is also not barred at this stage by qualified immunity. "If an Eighth Amendment violation based on deliberate indifference is plausibly alleged, then qualified immunity does not apply at the motion to dismiss stage." King v. Blackwood, No. 1:21CV383, 2023 WL 4163141, at *8 (M.D.N.C. June 23, 2023), report and recommendation adopted, No. 1:21-CV-383, 2023 WL 4902517 (M.D.N.C. Aug. 1, 2023) (citing *Thorpe v. Clarke*, 37 F.4th 926, 934 (4th Cir. 2022)). "Thus, if a plaintiff has made a showing sufficient to demonstrate Eighth Amendment violation involving deliberate indifference to inmate health of safety, that is also sufficient to overcome any claim to qualified immunity." *Id.* (cleaned up).
[7] Notably, many of the cases cited by Sheriff McFadden were resolved at summary judgment rather than on a motion to dismiss. *See, e.g., North v. Cuyahoga Cnty.*, 754 F. App'x 380, 393-94 (6th Cir. 2018); *Bost v. Wexford Health Sources, Inc.*, No. ELH-15-3278, 2022 WL 4290528, at *66 (D. Md. Sept. 16, 2022); *Graham v. Hodge*, 69 F. Supp. 3d 618, 632 (S.D. Miss. 2014).

16

authority; (3) through an omission, such as a failure to properly train [employees], that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice so "persistent and widespread" as to constitute a "custom or usage with the force of law." *See Bailey,* 2022 U.S. Dist. LEXIS 205190, at *5. Here, Plaintiff alleges that Sheriff McFadden's office "manifested deliberate indifference" through allowing Wellpath to provide constitutionally inadequate care and a failure to train prison officials, etc. Sheriff McFadden points out the substantial showing that must be made to recover under *Monell* (and the Court does not disagree); however, as with Plaintiff's individual capacity claims, the Court believes that the viability of her "official capacity" claims are best resolved at summary judgment.[8]

### 2. Negligent Hiring, Retention and Supervision

In addition to her Section 1983 claims, Plaintiff alleges a number of claims under North Carolina law, including that Sheriff McFadden is liable for "negligent hiring, retention and supervision" with respect to Wellpath and/or jail employees. Doc. No. 1 ¶¶ 133-139. For a negligent supervision or retention claim, a plaintiff must prove: (1) the specific negligent act on which the action is founded; (2) incompetency, by inherent unfitness or previous specific negligent acts, from which incompetency may be inferred; (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in oversight and supervision; and (4) that the injury resulted from the incompetency proved. *See Medlin v. Bass*, 327 N.C. 587, 591 (1990). The Sheriff does not challenge the sufficiency of Plaintiff's allegations on the substantive claim; instead, he argues that Plaintiff's Complaint fails to allege facts that overcome his "public official immunity" under North Carolina law. The Court agrees.

---

[8] *See,* n.7 *supra.*

For over a century, North Carolina has recognized an immunity for public officials charged with negligence in the performance of their duties. *See Epps v. Duke Univ.*, 122 N.C. App. 198, 202, 468 S.E.2d 846 (1996); *Smith v. State*, 289 N.C. 303, 331 (1976) ("[A] public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto."). Here, there is no dispute that the Sheriff is a public official entitled to this immunity. However, public official immunity is not absolute. Public officials' actions are not shielded if their actions were "(1) outside the scope of official authority, (2) done with malice, or (3) corrupt." *Kloepfer v. Cherokee Cnty. Sheriff's Dep't*, No. 1:23-CV-158-MOC-WCM, 2023 WL 8421067, at *1 (W.D.N.C. Dec. 4, 2023) (citing *Wilcox v. City of Asheville*, 222 N.C. App. 285, 288, 730 S.E.2d 226 (2012)).

A malicious act is one which is "(1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." *Wilcox*, 222 N.C. App. at 289; *Evans v. Croft*, 265 N.C. App. 601 (2019) ("An individual acts with malice when he "wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another."); *In re Grad v. Kaasa*, 312 N.C. 310, 313 (1984). The intent to inflict injury may be constructive where an individual's conduct "is so reckless or so manifestly indifferent to the consequences, where the safety of life or limb is involved, as to justify a finding of willfulness and wantonness equivalent in spirit to an actual intent." *See Foster v. Hyman*, 197 N.C. 189, 192 (1929). An "act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others." *Bartley v. City of High Point*, 381 N.C. 287, 873 S.E.2d 525, 534 (N.C. 2022) (quoting *Yancey v. Lea*, 354 N.C. 48, 550 S.E.2d 155, 157 (N.C. 2001)). Thus, the question here is whether Plaintiff has sufficiently alleged that Sheriff McFadden plausibly acted with malice that precludes his immunity as a public official.

18

Plaintiff argues that Sheriff McFadden "willfully and wantonly" contracted with and failed to monitor Wellpath despite the company's "well-documented and expressly acknowledged track record" of deficient and unconstitutional medical care to individuals in detention facilities. *See* Doc. No. 1 ¶¶ 97-103, 136-37. However, "[i]t is well established that 'a conclusory allegation that a public official acted willfully and wantonly should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss. The facts alleged in the complaint must support such a conclusion.'" *Mitchell v. Pruden*, 251 N.C. App. 554, 796 S.E.2d 77, 83 (2017) (quoting *Meyer v. Walls*, 347 N.C. 97, 114, 489 S.E.2d 880, 890 (1997)); *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 211 (4th Cir. 2019); *Bailey,* 2022 U.S. Dist. LEXIS 205190, at *5.

Although the Complaint recites the legal standard for malice and describes in some detail Wellpath's alleged failures in *other* jails, the Complaint fails to allege facts that establish that Sheriff McFadden was so reckless with respect to *his* jail that he acted maliciously and should lose his immunity. Indeed, the Complaint contains no allegations regarding events at the Mecklenburg County jail other than with respect to Stafford (and no specific allegations regarding the Sheriff's role in those events). Thus, even if Plaintiff's allegations establish Sheriff McFadden was inattentive or grossly negligent in hiring and retaining Wellpath, that is not enough to overcome public official immunity. *See Renzi v. Naphcare, Inc*., No. 1:24CV211, 2025 U.S. Dist. LEXIS 23111, at *61 (M.D.N.C. Feb. 10, 2025); *see also Layman v. Alexander*, 294 F. Supp. 2d 784, 796 (W.D.N.C. 2003) (Defendant Sheriff's motion to dismiss granted under public official immunity because plaintiff's allegation failed to show defendant acted with malice; allegations of gross negligence insufficient to pierce public official immunity). Therefore, the Court finds that Plaintiff's allegations are legally insufficient to overcome Sheriff McFadden's public official

19

immunity, and the Court will dismiss Plaintiff's claim for negligent hiring, retention and supervision.

### 3. Medical Malpractice

Plaintiff's other tort claim against Sheriff McFadden is medical malpractice. A medical malpractice claim in North Carolina must arise out of "the furnishing or failure to furnish professional services in the performance of medical, dental, or other healthcare by a health care provider." *See* N.C. Gen. Stat. § 90-21.11(2); *see also Wright v. United States*, 280 F. Supp. 2d 472, 477 (M.D.N.C. 2003). Based on this statute, Sheriff McFadden asks the Court to dismiss this claim on the ground that he is not a "health care provider." "Health care provider" is defined in North Carolina statute, N.C. Gen. Stat. § 90–21.11(1) as:

> (a) A person who… is licensed, or is otherwise registered or certified to engage in the practice of or otherwise performs duties associated with any of the following: medicine, surgery, dentistry, pharmacy, optometry, midwifery, osteopathy, podiatry, chiropractic, physiotherapy, radiology, pathology, nursing, anesthesiology, anesthesia, laboratory analysis, rendering assistance to a physician, dental hygiene, psychiatry, or psychology…

> (b) A hospital, a nursing home… or an adult care home…

> (c) Any other person who is legally responsible for the negligence of a person described by sub-subdivision a. of this subdivision, a hospital, a nursing home…or an adult care home...

> (d) Any other person acting at the direction or under the supervision of a person described by sub-subdivision a. of this subdivision, a hospital, a nursing home…, or an adult care home licensed…

> (e) Any paramedic…

Plainly, Sheriff McFadden is not a physician or engaged in any of the other professions listed in the statute. Therefore, whether or not he is a "health care provider" turns on whether he "is legally responsible for the negligence of [one of the named health professionals], a hospital, a nursing home…, or an adult care home…" § 90–21.11(1)(c). Under North Carolina law, sheriffs

are directly elected, hold office for four-year terms, and are not employed by the Board of County Commissioners. *See* N.C. Gen. Stat. § 162–1. Each elected sheriff "has the exclusive right to hire, discharge, and supervise the employees in his office." *Id.* § 153A–103(1). The sheriff may not delegate this authority to another person or entity. *Id.* § 162–24.

Thus, under North Carolina law, the sheriff, not the county encompassing his jurisdiction, has final policymaking authority over hiring, supervising, and discharging personnel in the sheriff's office. *Parker v. Bladen Cnty.*, 583 F. Supp. 2d 736, 739 (E.D.N.C. 2008), citing *Worrell v. Bedsole,* 110 F.3d 62 (4th Cir. 1997). In other words, "the control of employees hired by the sheriff is vested exclusively in the sheriff." *Id.* (citing *Peele v. Provident Mut. Life Ins. Co.,* 90 N.C.App. 447, 450 (1988)). Indeed, Sheriff McFadden acknowledges that a sheriff can be liable for his deputy's acts under the legal principle of respondeat superior. *See* Doc. No. 54 at 8, citing *Ramsey v. Schauble*, 141 F. Supp. 2d 584, 591 (W.D.N.C. 2001) ("the sheriff's liability for his deputy's acts is governed by law applicable to the relation of principal and agent, that is respondeat superior.").

Further, N.C. Gen. Stat. §§ 148–19 (2005) creates an affirmative duty on the sheriffs operating county jails to provide medical and mental health services to prisoners, and the Supreme Court of North Carolina has held that duty cannot be delegated. See *Medley v. N.C. Dep't of Correction,* 330 N.C. 837, 844 (1992); *State v. Wilson*, 183 N.C. App. 100, 104 (2007) ("Where a principal has a nondelegable duty, one with whom the principal contracts to perform that duty is as a matter of law an agent for purposes of applying the doctrine of *respondeat superior.*"); *Huntley v. Burris*, No. 1:18-CV-744, 2019 WL 12339734 (M.D.N.C. Mar. 13, 2019). Accordingly, Plaintiff has at least a plausible argument that the Sheriff may be a "health care provider" based on his alleged responsibility for the negligence of Wellpath. *See Huntley*, 2019 WL 12339734, at * 3

21

(declining to dismiss a medical malpractice claim against a sheriff, concluding that "whether [the sheriff] qualifies as a health care provider who provided professional services is an issue better resolved on a more robust factual record"); *Mathis v. GEO Grp., Inc.*, No. 2:08-CT-21-D, 2009 WL 10736631, at *1 (E.D.N.C. Nov. 9, 2009) (finding private corporation that owned and operated correctional facility was a "health care provider").[9]

However, even assuming without deciding, that Sheriff McFadden is a "health care provider," Plaintiff's allegations must be sufficient to overcome the Sheriff's public official immunity with respect to negligence claims. *See Leonard,* 254 N.C. App. at 699 (analyzing claims of public official immunity against two physicians who allegedly committed medical malpractice against a prisoner and finding that they were not public officials like a sheriff who is elected to a position created by statute). As discussed above, Plaintiff's factual allegations are insufficient to prove the high standard of malice required to remove the Sheriff's public official immunity. Therefore, the Court will grant Sheriff McFadden's Motion to Dismiss Plaintiff's medical malpractice claim.

### 4. N.C. Gen. Stat. § 162-55

Plaintiff's fourth and final substantive claim against Sheriff McFadden alleges that he violated N.C. Gen. Stat. § 162-55, which criminalizes what was formerly only a civil action and makes it unlawful for a "keeper of the jail" to injure a prisoner. Section 162–55 provides that "[i]f the keeper of a jail shall do, or cause to be done, any wrong or injury to the prisoners committed

---

[9] The Court also would likely conclude that Plaintiff has a plausible argument that her claim against the Sheriff for medical malpractice arises out of the provision of professional services. Again, to the extent that North Carolina law permits actions for medical malpractice based on vicarious liability, then Plaintiff need not show that the Sheriff himself performed professional services as argued by Sheriff McFadden. And there is no question that Plaintiff's claims otherwise arise out of professional services provided (or not provided) to Stafford.

22

to his custody, contrary to law, he shall not only pay treble damages to the person injured but shall be guilty of a Class I misdemeanor." N.C. Gen. Stat. § 162-55. Because it is, at least in part, a criminal statute, a plaintiff "must prove beyond a reasonable doubt that the jailer intended to injure the plaintiff or that the jailer was guilty of criminal negligence." *Letchworth v. Gay,* 874 F.Supp. 107, 109 (E.D.N.C.1995); *see also Layman v. Alexander*, 343 F. Supp. 2d 483, 494 (W.D.N.C. 2004) ("provides damages to prison detainees and inmates . . . for conduct by prison officials 'intended by the jailers' to cause harm to them or where the jailor was criminally negligent.").

"Criminal negligence is such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences, or a heedless indifference to the safety and rights of others." *Layman,* 294 F.Supp.2d at 796 (quoting *Letchworth,* 874 F.Supp. at 109). As with the discussion of "malice" in connection with Sheriff McFadden's public official immunity from Plaintiff's tort claims, the Court finds that Plaintiff's recitation of the legal standard for criminal negligence, in the absence of supporting factual allegations (beyond actual or constructive knowledge of Wellpath's negligence in other jails), is insufficient to allow the Section 162–55 claim to proceed.[10] Therefore, Plaintiff's claim against Sheriff McFadden for violation of N.C. Gen. Stat. § 162-55 will be dismissed.

### 5. Action on Bonds and N.C. Gen. Stat. § 58-76-1, et seq.

The Parties appear to agree that Plaintiff's claim for Action on Bond under N.C. Gen. Stat. § 58-76-1, et seq. rises and falls based on the validity of her state-law claim against Sheriff McFadden. *See* Doc. No. 1, Count Six. While sheriffs are typically entitled to governmental

---

[10] As discussed above, Wellpath and its employees are not "keepers of the jail" within the text or intent of the statute, *see, supra*, III A. 2 (b), and Plaintiff's allegations against the jail's detention officers do not claim that they withheld medical attention from Stafford; rather, the Complaint alleges that they repeatedly brought Stafford to Wellpath for medical care.

23

Case 3:24-cv-00716-KDB-SCR    Document 56    Filed 09/23/25    Page 23 of 25

immunity, "a sheriff may ... waive governmental immunity by purchasing a bond." *Sellers v. Rodriguez*, 149 N.C. App. 619, 624 (2002). Having determined that each of Plaintiff's state law claims should be dismissed, as discussed above, the Court will grant Sheriff McFadden's motion to dismiss this surety claim as well. *See Mcdougald v. Kersey*, No. 1:20CV666, 2022 WL 17578248, at *12 (M.D.N.C. Aug. 16, 2022), *report and recommendation adopted*, No. 1:20-CV-666, 2022 WL 17091685 (M.D.N.C. Nov. 21, 2022).

### D.    Punitive Damages

Finally, Plaintiff asserts an independent claim for punitive damages. Yet, under North Carolina law, an independent claim for punitive damages does not exist. *Lawley v. Liberty Mut. Grp., Inc*., No. 5:11-cv-00106-RLV-DSC, 2012 U.S. Dist. LEXIS 142205, at *19 (W.D.N.C. Sep. 28, 2012). Punitive damages may only be awarded as a remedy where permitted under a substantive cause of action. *Id*. Therefore, the Court will grant the motion to dismiss Plaintiff's separate claim for punitive damages and instead consider any potential award of punitive damages in connection with Plaintiff's remaining claims.

## II.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. The Court in part **GRANTS** and in part **DENIES** the Wellpath Defendants' Motions to Dismiss (Doc. Nos. 24, 41); **GRANTS** Atia Nunally's Motion to Dismiss (Doc. No. 34) and in part **GRANTS** and in part **DENIES** Sheriff Gary McFadden and Platte River Insurance Company's Motion to Dismiss (Doc. No. 27) as described above; and

2. This case shall proceed towards trial on the merits on the remaining claims in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: September 22, 2025

Kenneth D. Bell
United States District Judge